[Cite as *Lehman v. Lehman*, 2012-Ohio-2082.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| JANIE J. LEHMAN | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Petitioner-Appellant | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | Case No. 11 CA 43 |
| DAVID M. LEHMAN | |
| Petitioner-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:          Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 1998 DS 98


JUDGMENT:          Reversed and Remanded


DATE OF JUDGMENT ENTRY:          May 10, 2012


APPEARANCES:

For Petitioner-Appellant          For Petitioner-Appellee

DAVID K. GREER          LEE S. ROSENTHAL
Park West Building          GOLDMAN & ROSENTHAL
20545 Center Ridge Road, Suite LL38          2 Easton Oval, Suite 180
Rocky River, Ohio  44116-3423          Columbus, Ohio  43219-6042

*Wise, J.*

{¶1} Appellant Janie J. Lehman appeals the decision of the Fairfield County Court of Common Pleas, Domestic Relations Division, which rendered an amount due on Appellee David M. Lehman's obligation to pay one-half of the college expenses for the parties' two emancipated children. The relevant facts leading to this appeal are as follows.

{¶2} Appellant and appellee were married in August 1991. Two sons were born of the parties, R.L. (born in 1982) and K.L. (born in 1984). In May 1998, the parties filed a petition for dissolution of their marriage in the Fairfield County Court of Common Pleas, Domestic Relations Division. The court issued a decree of dissolution on June 10, 1998.

{¶3} The dissolution decree incorporated the parties' separation agreement, Article II(g) of which provided for splitting the cost of the sons' post-high school education. Said article reads in pertinent part:

{¶4} "Husband shall pay and be responsible for and Husband shall hold the Wife and children safe and harmless with regard to one-half of the college education or continuing education expenses of the children after high school, including colleges, trade schools, and other such educational facilities, and said obligation of the Husband shall include one-half of tuition, book expenses, room and board expenses, and other such expenses. * * * Husband's obligations under this paragraph shall terminated (sic) at the time each child reaches the age of twenty-four"

{¶5} A separate provision of the separation agreement, Article II(h), provided for splitting the cost of general expenses of the sons, such as, car insurance, car repair,

car payments, extracurricular activities, music expenses, tutoring, and "other similar expenses."

{¶6} In 2004 and 2005, appellant filed two contempt motions against appellee, alleging non-compliance with the aforesaid provisions. On August 1, 2005, the trial court rendered a contempt finding against appellee and a 30-day jail term, subject to being purged by appellee paying $100 per month toward an established liquidated amount of $3,200 to cover all past expenses, plus $1,000 in attorney fees.

{¶7} Appellant was further ordered in the August 1, 2005 judgment entry to establish a checking account at Lanfair Federal Credit Union, as a designated college expense account for the monthly payments, and to provide appellee with deposit slips. The entry also provided that appellee would be responsible for one-half of the deferred loans.

{¶8} Appellant thereafter filed motions to impose the jail sentence. Appellee responded by filing a motion to vacate the August 1, 2005 judgment entry which had found appellee in contempt and ordered the establishment of the Lanfair escrow account. These motions were resolved by an agreed judgment entry on April 16, 2007, which, among other things, (1) acknowledged a $4,000 payment to appellant by appellee and declared him "current on all ongoing monthly expenses" concerning R.L. and K.L. through March 31, 2007; (2) vacated the 2005 contempt entry; and (3) provided for appellee to thereafter pay $344.31 per month, via deposits into the Lanfair college expense account.

{¶9} On December 9, 2008, appellant filed a new contempt motion, ultimately leading to the present appeal. Appellant therein alleged that appellee had stopped

making payments on this new monthly obligation in March 2008, and that he had failed to pay one-half of the education expenses per the dissolution decree and the April 16, 2007 judgment entry. The motion sought restitution for payments appellant made to keep R.L.'s "Nelnet" student loan current, "and any other loans for which she has paid as [appellee's] share", as well as her attorney fees in prosecution of the motion. Appellee responded with his own motion on October 22, 2010, "for an order that he has met his obligation to pay expenses."

{¶10} The contempt motion was ultimately heard via an evidentiary hearing on January 20 and 21, 2011. Both appellant and appellee took the stand. Appellee's present wife, Kathryn Grosse Lehman, also testified.

{¶11} The trial court issued a preliminary judgment entry on April 19, 2011, in which it stated: "From the evidence offered, the court finds it most difficult to determine what 50% of the total college expense really is." Id. at 2. The court thus ordered the parties to submit post-trial worksheets and supporting documents by May 12, 2011. Accordingly, both parties submitted worksheets and supporting documentation to the court.

{¶12} The trial court issued its final judgment entry on July 1, 2011. The court dismissed all contempt matters against appellee, but ordered appellee to pay appellant the amount of $4,502.99 (one-half of $9005.97) at the rate of $300.00 per month, as further analyzed infra.

{¶13} The trial court clerk issued notice of its final judgment per Civ.R. 5 on July 6, 2011.

{¶14} On August 4, 2011, appellant filed a notice of appeal. She herein raises the following sole Assignment of Error:

{¶15} "I. THE TRIAL COURT ERRED IN ORDERING APPELLEE TO PAY ONLY $4,502.99 IN SATISFACTION OF HIS OBLIGATIONS, WHEN IT IS UNDISPUTED HE FAILED TO MAKE ANY COURT-ORDERED MONTHLY PAYMENTS OF $344.31 AFTER FEBRUARY 2008, WHICH THEREAFTER REQUIRED APPELLANT TO INCUR ADDED INDEBTEDNESS AND PAY THE BOYS' EDUCATION LOANS AND OTHER EXPENSES HERSELF, IN VIOLATION OF THE SEPARATION AGREEMENT."

I.

{¶16} In her sole Assignment of Error, appellant contends the trial court erred in ordering appellee to pay $4,502.99 for his portion of R.L.'s and K.L.'s college educational expenses per the dissolution decree.[1] We agree.

{¶17} An express agreement between divorcing parents that they will provide for college education to their emancipated children may be enforced by a court. *Gallo v. Gallo*, Lake App.No. 2000-L-208, 2002-Ohio-2815, ¶ 31. As an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911. A reviewing court must not substitute its judgment for that of the trial court where there

---

[1] We note appellant herein is only challenging the calculation of the amount owed to her per the separation agreement; the dismissal of the contempt allegations is not being appealed.

exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson* (1993), 66 Ohio St.3d 610. Furthermore, it is well-established that the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See, e.g., *Taralla v. Taralla,* Tuscarawas App.No. 2005 AP 02 0018, 2005–Ohio–6767, ¶ 31, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶18} At the outset, we share the trial court's recognition of the accounting complexities in this case. However, the basic components of the college expense situation can be set forth as follows.

### *R.L.'s Expenses*

{¶19} R.L., the older of the two sons, turned eighteen in 2000. He attended Capital University for one semester, and then studied at Full Sail University in Florida for the years 2001 and 2002. He took out student loans through ACS Corporation and Nelnet Corporation to help pay for this schooling. It appears undisputed that appellee paid a total of $13,220.00, directly to appellant, toward R.L.'s college expenses. Appellee's Brief at 14. These payments were made from 2003 to 2008. Id.

{¶20} Appellant presented to the trial court, inter alia, Plaintiff's Exhibit 4, which was identified as a spreadsheet regarding payments appellant made to Nelnet on R.L.'s college loan from that entity, along with copies of supporting bank statements and e-mails from Nelnet. See Tr. at 24. These payments by appellant total $9,627.45. Tr. at 25-26, 71; Plaintiff's Exhibit 4. At the time of trial the last known principal balance was $25,695.93, with a variable interest rate. Tr. at 44-45.

{¶21} Appellant also presented Plaintiff's Exhibit 5, which was identified as a spreadsheet of payments appellant made to ACS, another loan made for R.L.'s education. Tr. at 25, 42, 71. These payments total $457.47 on an original loan amount of $12,827.59. Tr. at 25, 28-29, 39; Plaintiff's Exhibit 5. This loan was for R.L. to attend Full Sail University in Winter Park, Florida, after a semester at Capital. Tr. at 40. The total outstanding principal balance of that loan, which was delinquent, was $14,683.90 at the time of the trial. Tr. at 43.

### K.L.'s Expenses

{¶22} K.L., the younger of the two sons, turned eighteen in 2002. He attended the University of Toledo for approximately one year, but decided to transfer to Columbus State Community College. He took out student loans through Great Lakes/Key Bank, Stafford Loans, Direct Loans, and Alternative Loans.

{¶23} Evidence was adduced at trial that appellant is a co-signer on the Great Lakes/Key Bank loan for K.L. Tr. at 30, 35-36. Appellant identified Exhibit 1 as a chart of payments she made to Great Lakes (processor of the loan originally made by Key Bank) on K.L.'s college loan, based on information from Great Lakes and Key Bank. Tr. at 18-19, 29, 71. It shows total payments of $3,826.66. Tr. at 28; Plaintiff's Exhibit 1.

{¶24} K.L. also incurred two loans from Great Lakes (Stafford loans), for attending Columbus State Community College and the University of Toledo, which were paid directly to the school. Tr. at 49, 52. One was $8,000.00, and the second was for $9,000.00. Tr. at 50-51, 56. After he withdrew from the school, refunds from the University of Toledo were issued totaling $6,949.72. Tr. at 62-63. K.L. also had a loan from Direct Loans, from the U.S. Department of Education, for $5,303.04, (with a net

disbursement amount of $5,250.00), which likewise went directly to the school. Tr. at 64-66.

**{¶25}** Plaintiff's Exhibit 7 reflected that K.L. obtained a $2,625.00 Stafford loan to attend Columbus State Community College. Appellee claimed to have paid K.L.'s Columbus State tuition directly, but was unable to produce any documentation or copies of checks for these payments. Tr. at 34-35. Appellant challenged this claim by identifying Plaintiff's Exhibit 6 as transmittals of $1,273.16 and $1,272.64 from the Stafford loan via the federal government to Columbus State for K.L. Tr. at 70-72. At some point, according to appellant, the parties decided to split the remainder of the Columbus State obligations. Tr. at 72.

**{¶26}** In regard to the Stafford and Alternative Loans, as per Item B of appellant's post-trial worksheet, appellant apparently paid an additional $1,204.95.

**{¶27}** In addition, at trial Plaintiff's Exhibit 3 was identified as a spreadsheet regarding payments appellant made to Direct Loans on K.L.'s college loan from that entity. Tr. at 23, 72. Appellant made the following payments on that account: $239.36, $58.53, $57.83, and $57.90, for a total of $413.62. Tr. at 27-28; Plaintiff's Exhibit 3.

<u>Analysis</u>

**{¶28}** At the evidentiary hearing on January 20 and 21, 2011, appellant testified that on February 26, 2008, she had frozen the Lanfair expense deposit account (set up pursuant to the agreed entry of April 2007) because the sons thought it would be more convenient that they receive their education money directly. At the advice of legal counsel, she subsequently unfroze the account. Tr. at 75-82. Appellant recounted that she decided to pay portions of the sons' college loans by herself to keep those loans

active and out of default. Tr. at 16, 21-22. However, appellee never attempted to pay his obligations (his $344.31 monthly payments) by other means, or to R.L. and K.L. directly. Tr. at 15-16. Appellee also did not make any payments after February 2008 pursuant to the agreed judgment entry of April 16, 2007, even after the account had been unfrozen. Tr. at 16-17. Appellee conceded that he had not made any payments since February 2008; when he attempted to make his March 2008 payment, the bank would not accept the check, as the account was closed. See Tr. at 9-10, Defendant's Exhibit I. However, appellee took the stand in his case-in-chief and identified Defendant's Exhibits D, E, F, G, H, and I as records of payments to appellant "for various different loans, et cetera." Tr. at 6. These exhibits were handwritten ledgers, some prepared by appellee and some by his wife, along with copies of checks. Tr. at 64-66. Appellee admitted he didn't always "do a great job of keeping records." Tr. at 13, 37.

**{¶29}** After hearing the evidence and reviewing the post-trial memoranda, the trial court concluded that because appellant had frozen the Lanfair account for a period of time, appellee should not be responsible for additional interest accrued during that period. The court also ruled that appellee should not be responsible for interest while a loan is in forbearance. The trial court also apparently accepted appellee's argument that because appellee had paid $13,220.00 toward R.L.'s student loans of $25,500.00, he owed nothing additional as to R.L.'s college expenses. The court further apparently determined, as to K.L., that starting with $16,066.16, the total tuition costs for the younger son, and subtracting refunds from loans of $7,060.19, the net loan expense would be $9,005.97, one-half of which is $4,502.99. This is the figure the trial court adopted as appellee's total obligation.

{¶30} However, a review of the record reveals that appellee admitted that his payments totaling $13,220.00 as to R.L. were all made between 2003 and 2008. A review of appellee's trial exhibits further reveals that most of the $13,220.00 amount was paid prior to March 31, 2007; about twelve payments, mostly in the $300.00 to $400.00 range each, were made by appellee thereafter, prior to March 2008, when the Lanfair account was temporarily frozen by appellant. Because the agreed judgment entry of April 16, 2007 found appellee to be current as of March 31, 2007, we presently find the trial court erred as a matter of law in crediting the entire $13,220.00 toward appellee's arrearage obligation. "Under Ohio law, the doctrine of res judicata is that an existing, final judgment or decree, rendered upon the merits and without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties or their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Hoff v. Brown*, Stark App.No. 2000CA00315, 2001 WL 876228, citing 63 Ohio Jurisprudence 3d (1985) 178-179, Judgments, Section 400. Because most of appellee's $13,220.00 was paid prior to the arrearage calculation "starting" date of March 31, 2007, we find the court's decision in this regard was not supported by competent, credible evidence. Therefore, we find the trial court committed reversible error in its calculation of appellee's obligation under the terms of the separation agreement.

{¶31} We find that the proper arrearage calculation under the facts and circumstances of this case is to take the amounts appellant has actually paid on the student loans subsequent to March 31, 2007, divide them in half, and subtract therefrom any payments appellee has made to appellant to reimburse her for same after

March 31, 2007.[2]  We will therefore remand this matter with directions to the trial court to utilize the aforesaid calculation of amounts owed by appellee as of the date of the trial in this matter.

{¶32}  Appellant's sole Assignment of Error is therefore sustained.

{¶33}  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Fairfield County, Ohio, is hereby reversed and remanded.

By: Wise, J.

Gwin, P. J., and

Edwards, J., concur.

_____

_____

_____

JUDGES

JWW/d 0404

---

[2]  In the alternative, appellant proposes that we simply require appellee to pay one-half of the total claimed student loan balances due of $73,242.48. However, such a remedy is premature until appellant actually pays toward such amount; furthermore, she made no such request in her motion for contempt and arrearages. Appellant also suggests, in the alternative, that appellee's arrearages be based on the missed payments (under the April 16, 2007 judgment entry) of $344.31 times the number of months since March 2008. We find this additional alternative would not fairly reflect the intent of the underlying separation agreement terms.

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


JANIE J. LEHMAN                                  :
                                                 :
    Petitioner-Appellant                     :
                                                 :
-vs-                                             :            JUDGMENT ENTRY
                                                 :
DAVID M. LEHMAN                                  :
                                                 :
    Petitioner-Appellee                      :            Case No. 11 CA 43


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Fairfield County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.

    Costs assessed to appellee.


                                _____


                                _____


                                _____

                                            JUDGES